**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DERRICK D. GILLIAM, | No. 21-cv-16844 (NLH) (AMD) |
| Plaintiff, | |
| v. | OPINION |
| STEPHEN E. CAVALLARO, et al., | |
| Defendants. | |

APPEARANCE:

Derrick D. Gilliam
22857014
Terre Haute
Federal Correctional Institution
Inmate Mail/Parcels
P.O. Box 33
Terre Haute, IN 47808

        Plaintiff Pro se

HILLMAN, District Judge

        Plaintiff Derrick D. Gilliam, a prisoner presently confined in Terre Haute, Indiana, moves to amend his complaint a second time. See ECF No. 9. The Court will grant the motion to amend and must now review the second amended complaint pursuant to 28 U.S.C. § 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons stated below, the second amended complaint will be dismissed.

1

I.    BACKGROUND

Plaintiff's original complaint was filed on September 13, 2021.  ECF No. 1.  On September 29, 2021, Plaintiff submitted an amended complaint and asked the Court to treat it as the operative complaint.  ECF No. 2.  The Court administratively terminated the amended complaint as Plaintiff had not paid the filing fee or submitted an in forma pauperis application.  ECF No. 4.  Plaintiff paid the filing fee, and the Court reopened the case.  Plaintiff subsequently filed a motion to amend the complaint, attaching a proposed second amended complaint.  ECF No. 9.

According to the proposed second amended complaint, Plaintiff struck a pedestrian with his car around 12:20 A.M. on April 12, 2013.  Id. at 5.  Defendant Stephen Cavallaro responded to the scene around 12:30 A.M.; emergency medical services and "seven to ten officers" were already present and attending to the victim.  Id.[1]  Defendant Jack Manning "noted the odor of alcohol on plaintiff's breath" and contacted the Gloucester County Prosecutor's Office.  Id.  Officers closed the street for further investigation, and Defendant Manning "observed an open vodka container in plaintiff's vehicle."  Id.

---

[1] The pedestrian later died from his injuries.  ECF No. 9 at 5.

Defendant Cavallaro "overheard plaintiff telling onlookers that he consumed one drink." Id. at 6.  Defendant Sergeant Giordano took Plaintiff, who was not injured, to Glassboro Police headquarters; Defendant Cavallaro drove separately.  Id. After arriving at headquarters, Defendant Cavallaro "personally smelled alcohol on Plaintiff's breath and decided to administer a field sobriety test."  Id.  Plaintiff refused to participate when Defendant Cavallaro asked him to perform the field sobriety test.  Id.  Defendants did not try to obtain a warrant to draw Plaintiff's blood and did not administer a breath test.  Id. Defendant Cavallaro warned Plaintiff that he planned to charge Plaintiff with obstruction if Plaintiff did not perform the field sobriety test, but Plaintiff continued to refuse.  Id. "While in police custody, plaintiff was involved in arguments with other arrestees and apparently talked over officers.  In response to those interactions and because of plaintiff's refusal to submit to a field sobriety test, Officer Cavallaro arrested and charged plaintiff with obstruction of justice." Id. at 7.

Plaintiff was handcuffed to the "processing bench" around 1:01 A.M. while Defendants Manning, Cavallaro, and Giordano began "'planning' . . . how the officers would obtain a blood sample."  Id.  Meanwhile, officers began searching Plaintiff's home in Blackwood, New Jersey without a warrant or Plaintiff's

consent.  Id.  Plaintiff refused to consent to a blood draw when asked.  Id. at 8.  "Even though over an hour had passed since Officer Cavallaro first arrived at the scene of the accident, no officer had taken any steps toward obtaining a search warrant." Id.

Around 1:36 A.M., Defendants Cavallaro and Russo took Plaintiff to Kennedy Memorial Hospital and presented Plaintiff with a form consenting to a specimen withdrawal.  Id. at 8. Plaintiff again refused to consent.  Id.  Defendant Russo called Defendant Manning "to get the level of maximum force to be able to use to get blood from plaintiff."  Id.  "Officer Manning contacted the Gloucester County prosecutor against to get the max level of force to get Plaintiff's blood."  Id.  Defendant Cavallaro "told Plaintiff that 'he was required to give blood and that if he did not, officers would use reasonable amount of force to extract a specimen.'"  Id. at 9.  Plaintiff signed the consent form after this warning from officers.  Id.

The officers ordered hospital staff to draw Plaintiff's blood, at which point Plaintiff "wavered" about proceeding with the draw.  Id.  He asked the nurse to stop and stated that he did not want his blood drawn because he was afraid of needles. Id.  The nurse left the exam room, and the officers "threatened Plaintiff that they would hold him down and take his blood, that he did not have a choice."  Id.  "At 1:56 A.M., Plaintiff's

4

blood was drawn, subjecting Plaintiff to severe pain and emotional distress." Id. at 10.  Defendants took Plaintiff back to police headquarters.  Id.

Plaintiff was held in the Gloucester County Jail for several days as he could not make bail.  Plaintiff attempted suicide while detained in the jail but was discovered in time and rushed to Cooper Hospital.  Id.  He was returned to the jail after his release from the hospital.  Id.  Plaintiff posted bail several days later and was released.  Id.

On April 25, 2013, Plaintiff was arrested at his home for first-degree vehicular homicide, N.J.S.A. § 2C:11-5(b)(3).  Id. at 11.  Plaintiff filed pretrial motions to suppress the blood test results, results of the search of his home, and suppress his statements to police officers.  Id. at 11.  The State did not oppose the motion to suppress the results of the warrantless search of Plaintiff's home.  Id.  The trial court conducted a hearing on October 13, 2017, ultimately denying the motion to suppress the blood results.  ECF No. 13 at 35.  Ultimately, Plaintiff pled guilty to second-degree reckless vehicular homicide.  ECF No. 9 at 12.  The State dismissed the obstruction charge.  Plaintiff retained his right to appeal the denial of his motion to suppress the blood results as a condition of his guilty plea.  He was sentenced to a five-year prison term to be

served consecutively to an unrelated federal conviction he was serving at the time.  Id.

Petitioner filed an appeal with the New Jersey Superior Court, Appellate Division ("Appellate Division").  The Appellate Division concluded that there were no exigent circumstances to support the warrantless blood draw and vacated Plaintiff's guilty plea.  State v. Gilliam, No. A-1354-18T2, 2021 WL 79181, at *1 (N.J. Super. Ct. App. Div. Jan. 11, 2021) (citing Missouri v. McNeely, 569 U.S. 141 (2013)).[2]  It affirmed the denial of Plaintiff's motion to suppress his statements and remanded for trial.  Id.; ECF No. 13 at 2-33.  The New Jersey Supreme Court denied the State's and Plaintiff's petitions for certification.  State v. Gilliam, 252 A.3d 561 (N.J. 2021); State v. Gilliam, 252 A.3d 564 (N.J. 2021).  This civil complaint followed.

Plaintiff alleges Defendants Cavallaro, Manning, Russo, and Giordano conducted an unconstitutional search and seizure, used unreasonable force, falsely arrested him, conspired to violate his Equal Protection rights, violated his procedural due process rights, and committed the torts of assault and battery. Plaintiff alleges Defendants Glassboro Borough and Gloucester County failed to train police officers on the correct procedures for collecting blood from drivers suspected of driving under the

---

[2] The Supreme Court decided McNeely five days after Plaintiff's arrest.  ECF No. 9 at 2.

influence of alcohol.  Id. at 15.  He seeks to bring a malicious

prosecution claim against the State of New Jersey.  Id. at 17.

II.  STANDARD OF REVIEW

     Section 1915A requires a court to review "a complaint in a

civil action in which a prisoner seeks redress from a

governmental entity or officer or employee of a governmental

entity."  28 U.S.C. § 1915A(a).  This action is subject to sua

sponte screening for dismissal under § 1915A because Plaintiff

is a prisoner seeking redress from government employees and

entities.  The Court must sua sponte dismiss any claim that is

frivolous, is malicious, fails to state a claim upon which

relief may be granted, or seeks monetary relief from a defendant

who is immune from such relief.  28 U.S.C. § 1915A(b).

     To survive sua sponte screening for failure to state a

claim, the complaint must allege "sufficient factual matter" to

show that the claim is facially plausible.  Fowler v. UPMC

Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  "'A claim has

facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged.'"  Fair Wind

Sailing, Inc. v. Dempster, 764 F.3d 303, 308 n.3 (3d Cir. 2014)

(quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "[A]

pleading that offers 'labels or conclusions' or 'a formulaic

recitation of the elements of a cause of action will not do.'"

Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Motions to amend a complaint are governed by Federal Rule of Civil Procedure 15(a).  That rule provides that once a party has filed a responsive pleading to the complaint "a party may amend its pleadings only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Leave to amend is to be freely granted unless there is a reason for denial, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."  Foman v. Davis, 371 U.S. 178, 182 (1962); see also Arthur v. Maersk, 434 F.3d 196, 204 (3d. Cir. 2006) ("Among the factors that may justify denial of leave to amend are undue delay, bad faith, and futility.").  The futility of a proposed amended pleading is evaluated under the same standard of legal sufficiency as a motion to dismiss under Rule 12(b)(6).  Travelers Indent. Co. v. Dammann & Co., 594 F.3d 238, 243 (3d Cir. 2010).

III.  DISCUSSION

A.  Motion to Amend

First, the Court must determine which of the three complaints submitted by Plaintiff is the operative pleading.

Plaintiff submitted an amended complaint on September 29, 2021 which asked the Court to "file this complaint as the operative complaint."  ECF No. 2 at 1.  A party has the right to amend his or her "pleading once as a matter of course" 21 days after service of the pleading or 21 days after a motion under Rule 12 is filed, whichever is earlier.  Fed. R. Civ. P. 15(a)(1).  The Court had not screened the original complaint or ordered service at the time the amended complaint was submitted; therefore, Plaintiff was entitled to amend his complaint.  This does not end the Court's analysis because Plaintiff subsequently filed his second amended complaint, ECF No. 9.

After amending the complaint as a matter of course, Plaintiff may only amend the complaint further with the opposing party's written consent or by leave of Court.  Fed. R. Civ. P. 15(a)(2).  "The court should freely give leave when justice so requires."  Id.  In the interests of justice, the Court will grant the motion to amend and proceed with its review of the second amended complaint under § 1915A.[3]

B.   Section 1915A Review

    1.   Fourth Amendment Unreasonable Force

---

[3] Plaintiff also submitted a "motion for judicial notice" containing "evidentiary" documents in support of his unlawful search claim.  ECF No. 13.  The Court will grant the motion and consider the documents along with the second amended complaint.

Count One of the second amended complaint alleges
Defendants Cavallaro, Manning, and Russo used unreasonable force
under the Fourth Amendment.[4]  He also alleges Defendant Giordano
failed to intervene during the other officers' unreasonable use
of force.  These claims are barred by the statute of
limitations.

"Although the statute of limitations is an affirmative
defense, a court may dismiss claims sua sponte if a time-bar is
obvious from the face of the complaint and no further
development of the record is necessary."  Demby v. Cty. of
Camden, No. 21-1433, 2021 WL 4957002, at *1 (3d Cir. Oct. 26,
2021) (citing Fed. R. Civ. P. 8(c)), cert. denied sub nom. Demby
v. Cty. of Camden, NJ, No. 21-6741, 2022 WL 516244 (U.S. Feb.
22, 2022).  New Jersey's two-year limitations period for
personal injury governs Plaintiff's complaint, Wilson v. Garcia,
471 U.S. 261, 276 (1985); Dique v. N.J. State Police, 603 F.3d
181, 185 (3d Cir. 2010), but the accrual date of a § 1983 action
is determined by federal law, Wallace v. Kato, 549 U.S. 384, 388

---

[4] Plaintiff refers to the "excessive force" standard of the
Eighth Amendment, but the Fourth Amendment's objective
reasonableness standard governs this claim as the use of force
in question occurred during Plaintiff's arrest and subsequent
detainment.  Graham v. Connor, 490 U.S. 386, 397 (1989);
Panarello v. City of Vineland, 160 F. Supp. 3d 734, 756 (D.N.J.
Feb. 8, 2016).

(2007); Montanez v. Sec'y Pa. Dep't of Corr., 773 F.3d 472, 480 (3d Cir. 2014).

"Under federal law, a cause of action accrues, and the statute of limitations begins to run, 'when the plaintiff knew or should have known of the injury upon which its action is based.'" Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009) (quoting Sameric Corp. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998)). Plaintiff bases his use of force and failure to intervene claims on Defendants' actions on April 12, 2013. ECF No. 9 at 13. Plaintiff knew of all the facts underlying his unreasonable force and failure to intervene claims, so that is when the two-year statute of limitations began. It expired on April 12, 2015, well before Plaintiff's original complaint was filed on September 13, 2021. ECF No. 1; Fed. R. Civ. P. 15(c)(1) (relation back of amendments). Accordingly, this claim will be dismissed for failure to state a claim. 28 U.S.C. § 1915A(b)(1).

2.   Warrantless Search

Plaintiff alleges in Count Two that Defendants Cavallaro, Manning, Russo, and Giordano violated the Fourth Amendment when they did not obtain a warrant before drawing Plaintiff's blood to test his blood alcohol content. ECF No. 9 at 14. "[A] warrantless search of the person is reasonable only if it falls within a recognized exception." Missouri v. McNeely, 569 U.S.

141, 148 (2013).  "[I]n drunk-driving investigations, the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant."  Id. at 165.

A claim for an unlawful search accrues at the time of the search, not when a court invalidates a search.  "[A] a claim accrues when the last act needed to complete the tort occurs. For a search, that is the moment of the search."  Nguyen v. Pennsylvania, 906 F.3d 271, 273 (3d Cir. 2018) (internal citation omitted).  Even though the New Jersey courts did not invalidate the blood draw until 2021, Plaintiff had a complete claim as of April 12, 2013.  The complaint filed in September 2021 was too late.

3.   Conspiracy to Violate Equal Protection Rights

In Count Three, Plaintiff alleges Defendants Cavallaro, Manning, Russo, and Giordano conspired to violate his equal protection rights.  ECF No. 9 at 14.  This claim is likely time barred, but the second amended complaint is factually insufficient to state a civil conspiracy claim regardless of the timeliness issue.

"Section 1985(3) permits an action to be brought by one injured by a conspiracy formed 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and

12

immunities under the laws.'" Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006) (quoting 42 U.S.C. § 1985(3)).  The Supreme Court has "emphasized that because § 1985(3) requires the 'intent to deprive of equal protection, or equal privileges and immunities,' a claimant must allege 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action' in order to state a claim." Id. at 135 (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)) (emphasis in original).  "Thus, a plaintiff must allege both that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious." Id.

Plaintiff provides no factual support for his claim that "Defendants Cavallaro, Russo, Manning and Giordano had an Agreement or Understanding Among all to plot, plan and conspired together to deprive the Plaintiff of his Rights to Equal Protection of Laws . . . ." ECF No. 9 at 14; see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (pleadings require "more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Plaintiff "fails to allege discriminatory animus against an identifiable class." Farber v. City of Paterson, 440 F.3d 131, 135 (3d Cir. 2006).  Even if the Court liberally construed the complaint to allege discrimination against DUI suspects, "that type of discrimination is not so 'invidious' as to qualify for §

13

1985(3) protection." Id. at 138.  Accordingly, the Court will dismiss this claim for failure to state a claim.  28 U.S.C. § 1915A(b)(1).

    4.   Monell Municipal Liability

    Plaintiff brings claims against Glassboro Borough and Gloucester County ("Municipal Defendants") for failing to train and supervise its officers.  ECF No. 9 at 15.  A plaintiff may sue a local government under § 1983 only for acts implementing an official policy, practice, or custom.  See Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 690-91 (1978).  To plausibly plead Monell liability, a plaintiff must identify the challenged policy or custom, attribute it to the municipality itself, and show a causal link between execution of the policy and the injury suffered.  Harley v. City of New Jersey City, No. 16-5135, 2017 WL 2774966, at *7-8 (D.N.J. June 27, 2017). Plaintiff alleges the Municipal Defendants failed to train and supervise its officers in collecting blood from DUI suspects, meeting this standard.  However, his claim against the Municipal Defendants once again runs afoul of the statute of limitations.

    Plaintiff alleges the Municipal Defendants did not train or supervise their officers on a directive from the New Jersey Attorney General stating that "Both the Division of Criminal Justice and each County Prosecutor shall maintain and make available to all appropriate law enforcement agencies a list of

14

personnel who will be available on a 24 hour, seven days per week basis, to assist in preparing and making search warrant applications." ECF No. 13 at 86; ECF No. 9 at 7. He claims that his blood was drawn without a warrant and without his consent as a direct result of these failures. A <u>Monell</u> claim "is subject to the same two-year statute of limitations as the underlying § 1983 tort." <u>Waselik v. Twp. of Sparta</u>, No. 16-4969, 2017 WL 2213148, at *5 (D.N.J. May 18, 2017). As Plaintiff's claim for the warrantless search is barred by the statute of limitations, so is his <u>Monell</u> claim based on that action.

5. Intentional Infliction of Emotional Distress

Count Five alleges that Defendants Cavallaro, Manning, Russo, and Giordano intentionally inflicted severe emotional distress "by forcing a medical procedure on Plaintiff without a warrant or consent." ECF No. 9 at 16.

> To make out a prima facie case of intentional infliction of emotional distress, a plaintiff must show that: (1) the defendant acted intentionally; (2) the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community;" (3) the defendant's actions proximately caused him/her emotional distress; and (4) the emotional distress was "so severe that no reasonable [person] could be expected to endure it."

<u>Soliman v. Kushner Companies, Inc.</u>, 77 A.3d 1214, 1229 (N.J. Super. Ct. App. Div. 2013) (quoting <u>Segal v. Lynch</u>, 993 A.2d

1229, 1241-42 (N.J. Super. Ct. App. Div. 2010) (alteration in original)).

Here, Plaintiff claims it was the act of drawing his blood that caused his emotional distress. Accordingly, his cause of action was complete on April 12, 2013, making a § 1983 complaint due April 12, 2015. Since the original complaint was not filed until September 2021, this claim is barred by the statute of limitations.

6. False Arrest

Plaintiff brings his false arrest claim against Defendants Cavallaro, Manning, Russo, and Giordano in Count Six of the second amended complaint. ECF No. 9 at 17.

The New Jersey state courts invalidated Plaintiff's criminal conviction and sentence due to the improper blood draw that preceded Plaintiff's April 25, 2013 arrest. In certain circumstances, "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." Heck v. Humphrey, 512 U.S. 477, 489-90 (1994). See also Garrett v. Murphy, 17 F.4th 419, 425 (3d Cir. 2021) ("In Heck, the Supreme Court held that a prisoner lacks a 'cause of action' under § 1983 if the prisoner is challenging an 'allegedly unconstitutional conviction or imprisonment' before having the conviction or sentence overturned."). However,

16

*Heck*'s rule does not extend to "a § 1983 claim for false arrest in which there was no outstanding conviction at the time of the accrual, i.e., the arrest." Dique v. New Jersey State Police, 603 F.3d 181, 187 (3d Cir. 2010) (citing Wallace v. Kato, 549 U.S. 384, 393 (2007)). "[T]he *Heck* bar is applicable only when, at the time the § 1983 suit would normally accrue, there is an existing criminal conviction[.]" Id. (emphasis in original).

Defendants arrested Plaintiff on April 12, 2013 and again on April 25, 2013. There was no existing criminal conviction before October 31, 2018 when Plaintiff pled guilty. ECF No. 9 at 12. Therefore, *Heck* did not delay the accrual of Plaintiff's false arrest claim. The claim accrued on April 25, 2013 at the latest, and the statute of limitations expired on April 25, 2015. As such, this claim is barred by the statute of limitations.

7. Malicious Prosecution

Plaintiff seeks to bring a malicious prosecution claim against the State of New Jersey. ECF No. 9 at 17. However, the State of New Jersey is immune from suit in federal court. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."

17

U.S. Const. amend. XI.  "Absent a state's consent, the eleventh amendment bars a civil rights suit in federal court that names the state as a defendant . . . ."  Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981).[5]  Section 1983 does not override a state's Eleventh Amendment immunity.  Quern v. Jordan, 440 U.S. 332, 338 (1979).  The claim against the State and Defendants in their official capacities must be dismissed with prejudice.  28 U.S.C. § 1915A(b)(2).

As Plaintiff is proceeding pro se, the Court must construe the complaint liberally and consider whether he has stated a malicious prosecution claim against Defendants Cavallaro, Manning, Russo, and Giordano in their individual capacities. For a malicious prosecution claim, Plaintiff must plead facts indicating that (1) Defendants initiated a criminal proceeding; (2) the criminal proceeding ended in Plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) Defendants acted maliciously or for a purpose other than bringing Plaintiff to justice; and (5) Plaintiff suffered from a "deprivation of liberty consistent with the concept of seizure as a consequence

---

[5] The State's Eleventh Amendment immunity extends to state officials sued in their official capacity for monetary damages. See Turner v. Johnson, No. 17-541, 2020 WL 6323698, at *4 (D.N.J. Oct. 28, 2020) ("Indeed, a state official sued in his official capacity for monetary damages is not a 'person' for purposes of Section 1983.").  Therefore, any claims against the individual Defendants in their official capacities must be dismissed.  28 U.S.C. § 1915A(b)(2).

of a legal proceeding." Allen v. N.J. State Police, 974 F.3d 497, 502 (3d Cir. 2020).

The facts alleged in the second amended complaint do not state a malicious prosecution claim against Defendants in their individual capacities.  "The favorable termination element is only satisfied if the criminal case was 'disposed of in a way that indicates the innocence of the accused.'" Id. (quoting Kossler v. Crisanti, 564 F.3d 181, 187 (3d Cir. 2009)). "Depending on the facts, a plaintiff may be able to satisfy the favorable termination if he shows that his criminal proceeding was terminated by . . . an acquittal, or a final order in favor of the accused by a trial or appellate court." Id. at 502-03. Here, the New Jersey state courts did not enter a final order acquitting Plaintiff; they vacated his guilty plea and remanded the case for trial. State v. Gilliam, No. A-1354-18T2, 2021 WL 79181, at *1 (N.J. Super. Ct. App. Div. Jan. 11, 2021).

To the extent Defendants can be said to have initiated a criminal proceeding against Plaintiff, the criminal proceeding has not been disposed of in a way that indicates Plaintiff is innocent of vehicular homicide.  Plaintiff's "ultimate success in his suppression motion may bear on the probable cause element.  However, since the suppression did not cast any doubt on the reliability of the evidence, it does not indicate his innocence." Allen, 974 F.3d at 504.

Additionally, there are no facts from which the Court could reasonably infer that Defendants acted maliciously or for a purpose other than bringing Plaintiff to justice.  Plaintiff has therefore not stated a malicious prosecution claim against the individual officer Defendants, and the Court will dismiss this claim without prejudice.

8.   Abuse of Procedural Due Process

Plaintiff alleges in Count Eight that Defendants Cavallaro, Manning, Russo, and Giordano committed abuse of procedural due process.  ECF No. 9 at 18.  "Malicious abuse of legal process is part of 'a group of closely related torts that, although ancient in origins, are treated with great caution because of their capacity to chill resort to courts by persons who believe that they have a criminal complaint or civil claim against another.'" Burgess v. Bennet, No. 20-7103, 2021 WL 1050313, at *6 (D.N.J. Mar. 19, 2021) (quoting LoBiondo v. Schwartz, 970 A.2d 1007, 1022 (N.J. 2009)).  "To be found liable for malicious abuse of process, a party must have performed additional acts after issuance of process which represent the perversion or abuse of the legitimate purposes of that process."  Hoffman v. Asseenontv.Com, Inc., 962 A.2d 532, 541 (N.J. Super. Ct. App. Div. 2009) (internal quotation marks omitted).  "Thus, a plaintiff claiming malicious abuse of process must allege '(1) that defendants made an improper, illegal and perverted use of

20

the process, i.e., a use neither warranted nor authorized by the process, and (2) that in use of such a process there existed an ulterior motive.'" Burgess, No. 20-7103, 2021 WL 1050313, at *6 (quoting Mandelbaum v. Arseneault, No. A-1042-15T4, 2017 WL 4287837, at *5 (N.J. App. Div. Sept. 28, 2017)).

As with Plaintiff's false arrest claim, his abuse of process claim is too late. "[A] section 1983 claim for false arrest accrues on the date of the arrest, as does a section 1983 claim for abuse of process, because on that date a plaintiff would have reason to know of the injury which those two torts encompass." Rose v. Bartle, 871 F.2d 331, 350 (3d Cir. 1989) (internal quotation marks omitted). Defendants arrested Plaintiff on April 12, 2013 and again on April 25, 2013, making Plaintiff's complaint due April 25, 2015 at the latest. Moreover, there are no facts suggesting Defendants acted with improper motives in pursuing the case against Plaintiff.

9. Assault and Battery

Plaintiff's final claim alleges Defendants Cavallaro, Manning, Russo, and Giordano committed the torts of assault and battery when they took Plaintiff's blood sample without a warrant and without his consent. ECF No. 9 at 18. As with many of Plaintiff's claims, the statute of limitations for the claim expired prior to the filing of the original complaint. The blood draw occurred on April 12, 2013, id. at 10, making the

21

assault and battery claims due by April 12, 2015.  N.J.S.A. §
2A:14-2.  The complaint submitted in September 2021 was filed
too late.

C.   Summary

The Court will grant the motion to amend, ECF No. 9, but
concludes that the second amended complaint may not proceed at
this time.  Most of Plaintiff's claims are barred by the two-
year statute of limitations for § 1983 claims in this District.
Those claims will be dismissed with prejudice for failure to
state a claim.  28 U.S.C. § 1915A(b)(1).  The claims against the
State of New Jersey and Defendants in their official capacities
will be dismissed with prejudice as they are immune from suit.
28 U.S.C. § 1915A(b)(2).

Liberally construing the allegations in the second amended
complaint to include a malicious prosecution claim against the
individual Defendants, Plaintiff has not stated a claim as the
criminal proceedings have not yet ended in his favor.  The Court
declines to stay this matter pending the outcome of Plaintiff's
criminal case because his second amended complaint does not
contain facts that could support a reasonable inference that
Defendants acted with an ulterior motive.  See Wallace v. Kato,
549 U.S. 384, 393-94 (2007) (noting that if "a plaintiff files a
false-arrest claim before he has been convicted . . . it is
within the power of the district court, and in accord with

22

common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended"). Accordingly, this claim is dismissed without prejudice.  28 U.S.C. § 1915A(b)(1).[6]

IV.   <u>CONCLUSION</u>

For the reasons stated above, the Court grants Plaintiff's motion to amend, ECF No. 9.  The Clerk will be directed to file the second amended complaint.  The second amended complaint will be dismissed.

An appropriate order follows.


Dated:  <u>March 3, 2022</u>            <u>s/ Noel L. Hillman</u>
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

---

[6] Defendants have not been served, but counsel submitted a letter indicting they were "tracking the docket entries in this matter" and were prepared to file a motion to dismiss if necessary.  ECF No. 11.  No action is required from Defendants at this time as the Court is dismissing the second amended complaint under § 1915A.